[No. 29989. Department One. April 17, 1947.]

COLUMBIA RIVER ICE COMPANY, *Appellant,* v. JOHN E. FARRIS, *Respondent.*[1]

H. *Earl Davis,* for appellant.

E. A. *Cornelius,* for respondent.

MILLARD, J.—Plaintiff, a domestic corporation, of which Inger S. Hartung is the owner and manager, operates an ice-making plant and cold storage lockers at Grand Coulee. John E. Farris does business under the trade name of Farris Ice Machine Company and is engaged in the business of manufacturing, repairing, and reconditioning cold storage plants and ice machines.

On the theory that there was a breach of implied warranty of fitness of machinery and equipment purchased by it from defendant, plaintiff brought this action to recover against defendant for damages alleged to have been sustained by the former as a result of defective construction and improper installation of the machinery and equipment in question. Defendant pleaded as an affirmative defense a conditional sales contract with plaintiff, in which plain-

[1] Reported in 179 P. (2d) 520.

tiff waived the warranty of fitness of the machinery to perform the service required of it.

The cause was tried to the court, sitting with a jury. At the close of all the evidence, the trial court discharged the jury, sustained defendant's challenge to the sufficiency of the evidence, and entered judgment of dismissal, on the ground that the contract pleaded by defendant limited the liability of defendant to replacing damaged parts and waived all claims of plaintiff to damages to business and loss of profits. Plaintiff appealed.

Appellant contends that the machinery in question was not sold and installed under a conditional sales contract, therefore the trial court erred in holding that the purported conditional sales contract was a contract of the parties which limited the warranty as to the quality or fitness of the machinery furnished.

The facts are as follows: On or about February 14, 1942, respondent made an inspection of appellant's plant and recommended to the Reconstruction Finance Corporation, which was to lend to appellant the money for such expenditure, installation of certain equipment, which respondent agreed to install at a certain price. The recommendation of respondent was adopted by and on behalf of appellant and through the officers of the Reconstruction Finance Corporation, which agreed to finance the improvements. By letter dated April 11, 1942, respondent advised the Reconstruction Finance Corporation that respondent had furnished to appellant the equipment recommended, and that the amount of the contract plus state tax was $1,296.77, from which should be deducted an allowance of $492.42 for equipment "taken in on the above," leaving a balance due on the contract to respondent of $804.37. By letter dated May 6, 1942, the Reconstruction Finance Corporation transmitted to respondent a check in the amount of $804.37, payment in full for machinery and equipment, etc., delivered to appellant.

An employee of respondent testified that he installed the equipment in appellant's plant between March 30, 1942, and April 5, 1942. Over objection of appellant, a paper purporting to be a contract between respondent and appel-

lant was admitted in evidence. A representative of respondent testified with reference to this paper that he prepared it in the apartment of Mrs. Hartung, who owns appellant corporation, which contract was signed by John E. Farris and Mrs. Hartung. This paper is not dated. It shows the sale by Lewis Casing Company or Lewis Refrigeration and Supply Company, a division of Lewis Casing Company, to Mrs. Inger S. Hartung, Columbia River Ice Company, Grand Coulee, Washington:

"Farris Ice Machine Company hereby sells to the Purchaser and Purchaser hereby agrees to purchase and the Seller proposes to ship the following personal property, materials or supplies, subject to all the terms and provisions listed below and on the reverse side of this contract."

On the first page of this paper is the description of the machinery, the price of which is as stated above, and on the same page is the list of equipment taken by respondent on account and an allowance of $492.42 made on the account, leaving a balance of $804.37. Section 12 on the second page of this contract, which is denominated "Conditional Sales Contract," reads as follows:

"The Seller will exercise diligent care in the installation of the property covered hereby, and will furnish for replacement, free of charge, for a period not exceeding one year from date hereof, F.O.B. cars, Seattle, Washington, any part of new equipment that proves defective in workmanship or material within said time. (If this contract is assigned, Purchaser agrees to look to Seller only for performance of this clause, and herewith waives any rights to assert a set-off as to Assignee.) This is understood and agreed to be the extent of the Seller's warranties and guarantees hereunder, and there are no further warranties or guarantees. The Purchaser hereby waives any and all claims other than the above against the Seller for damage to any stock, goods, wares, merchandise and all other personal property of any kind or character, and also any and all real property, caused or occasioned by any such defects or arising therefrom or from such installation, and also any other claims of every and all kind, character and description whatsoever by reason of such defects or arising therefrom or such installation."

The contract then states it is executed in triplicate, one copy of which was delivered to and retained by the purchaser the ........................day of ........................... Underneath that printed form is the signature "Columbia River Ice," "Inger S. Hartung" and also the signature "John E. Farris." Below those signatures is a "Certificate of Installation," which recites that the undersigned purchaser certifies that the property described in the above contract has been furnished by the seller, and that the delivery and installation have been fully completed as required by the contract, and that the equipment and installation have been accepted as satisfactory. Underneath that certificate is the signature of Inger S. Hartung as purchaser, but that certificate, like the contract, is not dated.

Appellant argues that, at the time Mrs. Hartung signed the name of appellant corporation and herself to that paper, it was the understanding of Mrs. Hartung that she was signing a receipt for the equipment installed by respondent to enable respondent to collect the money that was due to him from the Reconstruction Finance Corporation.

One of respondent's witnesses, as stated above, testified that the equipment was delivered and installed not later than April 5, 1942. Respondent's representative, who tes-tified that he prepared the purported contract in the apartment of Mrs. Hartung, testified that the instrument was executed in April, 1942, but, when interrogated by the court as to the specific date in April, he testified that "the plant was started up, I would say, about the 10th of May, and the contract was signed probably, two weeks prior to that." When pressed further by the court, this representative of respondent testified that the contract was signed about three weeks prior to May 10th. According to this witness, the purported contract was signed April 18th or 19th, which was seven or eight days subsequent to the date that respondent informed the Reconstruction Finance Corporation that the equipment was delivered and installed. This witness further testified that the page on which the purchaser waived the warranty of fitness of the machinery to

perform the service required of it was never read to Mrs. Hartung, and the reason he did not type on the second or back page of the paper in question, the price and remainder of the information respecting the contract, was that it was not customary in a transaction of this kind, which was "a cash deal," to fill in those blanks.

■ A question of fact was presented for consideration of the jury whether the so-called contract and certificate of installation were signed before or after the purchase and installation of the equipment. If the equipment was purchased and installed prior to the time appellant signed the paper, "Conditional Sales Contract," and the certificate that the equipment had been installed, the property was not sold or installed under a conditional sales contract. The transaction was, as respondent's representative testified, "a cash deal."

Appellant's position that it believed the representations of respondent that the paper was merely an invoice which indicated the equipment was installed and that the signature of appellant purchaser was a condition prerequisite to collection by respondent seller from the Reconstruction Finance Corporation of the purchase price money for the installation, is tenable if, in fact, the equipment was installed prior to the time of appellant's signatures to the paper in question. That was a question for the jury.

The judgment is reversed, and the cause remanded, with direction to the superior court to grant a new trial.

MALLERY, C. J., SIMPSON, HILL, and ABEL, JJ., concur.

May 29, 1947. Petition for rehearing denied.